PEOPLE ex rel. PINE v. MARTIN.

(Supreme Court, Appellate Division, Third Department.  June 28, 1900.)

1. MANDAMUS—CIVIL SERVICE AND VETERAN ACTS—VETERAN—DISCHARGE—MIL-
ITARY EMPLOYE—ARMY AND NAVY.

Relator, a veteran, was armorer of a state armory, and on April 1, 1899, was discharged by the captain without cause. Laws 1899, c. 370. which took effect April 19, 1899, provided that the civil service laws and veterans' acts, under which a veteran could not be discharged except for cause, should not apply to the military service. *Held*, that mandamus would not lie to compel the captain to reinstate relator, since, the civil service laws and veterans' acts not applying to the military service, relator could be removed without cause.

2. SAME—SALARY.

Where a veteran was armorer of a state armory, and was discharged by the captain without cause, an order requiring the captain to pay the salary of the armorer from the time of his discharge to the time of reinstatement could not be sustained, as the captain was not personally liable for such salary; and since the veterans' acts of 1894 and 1896, providing that a veteran could not be discharged except for cause, did not apply to the military service, the discharge was authorized.

Parker, P. J., dissenting.

Appeal from special term, Delaware county.

Mandamus by the people, on relation of Thomas A. Pine, to compel James C. Martin, as captain of the 33d separate company, National Guard of New York, to reinstate relator as armorer in a state armory. From an order directing the issuance of a peremptory writ, defendant appeals. Reversed.

Prior to April 1, 1899, the relator was armorer in the state armory at Walton. Upon that day he was discharged by the appellant without cause. This proceeding was brought upon June 26, 1899, to compel the appellant to reinstate the relator on the ground that his discharge was unlawful because he was a veteran, and could not be discharged except for cause, and for any other relief to which he might prove himself entitled. An alternative writ was issued, and after a trial a final order was entered directing a peremptory writ, from which final order this appeal is taken.

Argued before PARKER, P. J., and EDWARDS, MERWIN, SMITH, and KELLOGG, JJ.

T. Sanderson, for appellant.
Alex. Neish, for respondent.

SMITH, J. Upon the 19th day of April, 1899, chapter 370 of the Laws of that year took effect. That statute was, in effect, a codification of the civil service law and the veterans' acts, and it was therein provided that the act should not apply to the military service. It is claimed, however, that the saving clause in that act preserves to the relator the right to his reinstatement. The saving clause found in section 29 is undoubtedly broad, and assumes to save all rights accrued, and provides that they may be asserted or enforced as fully as if the former acts had not been repealed. By that act, however, the military service was absolutely divorced from the rules governing the civil service. To sustain this order, we must hold that, notwithstanding the plan to exempt the military service from the rules

of the civil service, they were nevertheless to be subject to those rules to the extent of reinstatement where an employé had, under the old statute, been wrongfully discharged. It cannot be that the statute would require the reinstatement of a man to be the next moment removed. This, to our minds, would be such an inconsistency as not to come within the fair interpretation of the saving clause of the statute. If the relator were wrongfully discharged, he had a right to his salary from the 1st day of April to the 19th day of April, when the act of 1899 took effect. That right was preserved to him, but that right alone. This construction is consistent with the evident intent and spirit of the act of 1899, and the saving clause thereof is fairly satisfied.

The question remains, then, can the order be sustained as to that part which directs the appellant to pay to the respondent his salary between April 1 and April 19, 1899? We think not, for two reasons: First. We are cited to no authorities which impose upon the appellant a personal liability for this compensation. The pay of the armorer is a charge upon the county. It is true that it has to be certified by the captain. We know of no statute, however, which makes the captain liable personally where he has refused to certify or where he has unlawfully discharged an employé. Second. Assuming that the captain is not personally liable, should the order be modified so as to require him to certify the relator's compensation for the time of his unlawful discharge? This brings us to the question which was mainly urged upon the argument, to wit, that the veterans' acts of 1894 and 1896 never applied to the military service. The acts by their terms apply to every department of the state of New York, so that within the letter of the statute the relator was entitled to the benefit of the acts. We are impressed, however, with the incongruity of a military department restricted by civil service regulations. No disciplinary power is given to the captain under the Military Code in case of a neglect of duty. That the armorer should have the protection of the veterans' acts, and could hold his office, in defiance of the will of the commander, at the armory, would be subversive of military discipline. The method of his appointment is specified in the Military Code, and the power of appointment there unrestricted. The act of 1899 itself, including the veterans' acts, as a part of the civil service of the state, and exempting therefrom entirely the military service, is an index of the legislative view and of the legislative intention in the passage of those acts. We are of the opinion that the veterans' acts, so called, notwithstanding the broad language used, were applicable only to the civil service of the state. It follows that the discharge of the relator was authorized. As, however, by the literal interpretation of the statute, he would seem to have some rights upon this application, we think the order should be reversed, without costs.

Order reversed, without costs, and application denied. All concur, except PARKER, P. J., dissenting.